JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAULER SMITH, LLP a California Limited Liability Partnership,<br><br>      Plaintiff,<br><br>v.<br><br>JOSEPH W. VALERIO, et al.,<br><br>      Defendants. | Case No. CV-20-00458 AB (ASx)<br><br>ORDER **GRANTING** DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

  Defendants CTRLR, LLC,  and Joseph W. Valerio ("Defendants") filed an Answer ("Answer")  to the First Amended Complaint ("FAC") and a Motion for Judgment on the Pleadings ("Motion") on January 31, 2020.  (Answer, Dkt. No. 12; Motion, Dkt. No. 13.)  Plaintiff Tauler Smith LLP ("Plaintiff") filed an Opposition ("Opp'n," Dkt. No. 15) and Defendants filed a Reply.  ("Reply," Dkt. No. 19.)  For the following reasons, the Court **GRANTS** Defendants' Motion as to Counts 1 and 5 of the FAC. The Court declines to exercise supplemental jurisdiction over the remainder of the action and **REMANDS** Counts 2, 3, and 4 of the FAC back to Los Angeles County Superior Court.

## I.  PLAINTIFF'S FIRST AMENDED COMPLAINT

  Defendants removed this case was removed from Los Angeles County Superior

Court on January 16, 2020 based on federal question jurisdiction.  (Defendants'
Notice of Removal ("Removal," Dkt. No. 1).)  Plaintiff responded by filing an FAC
on January 23, 2020.  ("FAC," Dkt. No. 10.)  The FAC arises from a dispute between
a financial services independent contractor (Defendants CTRLR and Valerio) who
worked for a law firm (Plaintiff Tauler Smith).  Defendants resigned from their
bookkeeping services around February of 2019 and Plaintiff alleges they stole
privileged and confidential material ("Stolen Property").  (FAC ¶ 3.)  Plaintiff
requested the return of this material, Defendants refused, and subsequently sent an
invoice for work done that contained "several fraudulent billing entries" according to
Plaintiff.  (FAC ¶ 5.)

The FAC alleges Defendants engaged in a "bad faith campaign to injure
Plaintiff's business[]" by doing things like submitting a "fraudulent 'contract'" signed
by Plaintiff's managing partner and filing a small claims action to extort Plaintiff.
(FAC ¶¶ 6-8.)  The FAC asserts that Defendants made misrepresentations to a
collections agency with a forged contract and Defendants used the wires of the United
States to send this information to a collections agency in May, 2019.  (FAC ¶¶ 20 -
21.)  When Plaintiff told the collection agency what was going on the agency stopped
its efforts and Defendants filed a small claims action.  (FAC ¶ 23.)

Count One alleges a violation of the Computer Fraud and Abuse Act, 18 U.S.C.
§ 1030.  (FAC at p. 4-5.)  This claim asserts the Defendants purposefully withheld and
exceeded authorization to the Plaintiff's payroll and bank accounts to destroy
Plaintiff's access and business.  (FAC ¶¶ 24-27.)  It continues to allege that
Defendants used  the fraudulent invoice with the intent to extort and therefore
Defendants caused loss aggregating at least $5,000.  (FAC ¶¶ 27-28.)

Count Two, Count Three, and Count Four allege state law claims of Fraud,
Intentional Interference With Contractual Relations, and Breach of Fiduciary Duty
respectively.  (FAC at p. 5-7.)

Count Five alleges a violation of RICO, 18 U.S.C. § 1962(c).  (FAC at p. 7-14.)

1    The FAC defines the RICO allegation under 28 U.S.C. § 2315 for receiving or

2    possessing stolen goods in excess of $5,000 in value.  (FAC ¶ 57.)  The FAC lists

3    Mark Poe and Gaw Poe LLP as persons under the RICO claim.  (FAC ¶ 58.)  This is

4    what the FAC refers to as the "'CTRLR- POE Enterprise'" that was a scheme of

5    extortion and theft by coordinating the activities between Defendants and Mark Poe

6    and Gaw Poe LLP by using the wires of the United States and by receipt of stolen

7    property.  (FAC ¶ 58.)  It continues to allege that because Mark Poe and Gaw Poe

8    LLP removed this action to federal court they were therefore in possession of the

9    Stolen Property that the Defendants allegedly refused to return after resigning from

10   working for Plaintiff.  (FAC ¶68.)  It asserts that the material in question will "directly

11   assist in Gaw Poe's representation of Gaw Poe Clients."  (FAC ¶ 68.)  The FAC

12   alleges this stealing of material and use of stolen material to extort Plaintiff threatens

13   ongoing and future racketeering activity including helping Gaw Poe LLP in ongoing

14   litigation with Plaintiff.  (FAC ¶¶ 70-72.)

15       **II.    LEGAL STANDARD**

16       "After the pleadings are closed – but early enough to not delay trial – a party

17   may move for judgment on the pleadings."  Fed. R. Civ. Proc. 12(c).  The standard for

18   assessing a Rule 12(c) motion for judgment on the pleadings is the same as the

19   standard for a Rule 12(b)(6) motion to dismiss.  *Enron Oil Trading & Trans. Co. v.*

20   *Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).  A Rule 12(c) motion may

21   be based on either (1) a lack of cognizable legal theory, or (2) insufficient facts to

22   support a claim.  *Mays v. Wal-Mart Stores, Inc.*, 354 F. Supp. 1136, 1141 (C.D. Cal.

23   2019).  To decide a motion for judgment on the pleadings, a court must accept as true

24   all factual allegations in the complaint and must construe those allegations in the light

25   most favorable to the non-moving party.  *Pillsbury, Madison & Sutro v. Lerner*, 31

26   F.3d 924, 928 (9th Cir. 1997); *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

27   A court should grant a motion for judgment on the pleadings only when the moving

28   party is entitled to judgment as a matter of law.  *Fajardo v. County of Los Angeles*,

3.

179 F.3d 698, 699 (9th Cir. 1999). "The Court may consider information 'contained in materials of which the court may take judicial notice' and documents attached to the complaint." *Mays,* 354 F. Supp. at 1141 (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

The Plaintiff is required to state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007). Courts are not required to accept a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*, 550 U.S. at 557). Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)") requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Apumac, LLC v. Flit Hills Int'l*, 2015 WL 13306128, at *2 (C.D. Cal. Feb. 6, 2015). However, when fraud is alleged, Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)") modifies the requirements of Rule 8(a). *Apumac,* 2015 WL 13306128, at *2 (C.D. Cal. Feb. 6, 2015). Where fraud is alleged it must be pleaded with particularity as required by Rule 9(b), nonfraudulent conduct must only satisfy the pleading requirement set forth in Rule 8(a). *Apumac,* 2015 WL 13306128, at *2 (C.D. Cal. Feb. 6, 2015). "Averments of fraud that fail to meet the particularity standard are disregarded, and the remaining allegations are evaluated to see if a valid claim has been stated." *Apumac,* 2015 WL 13306128, at *2 (C.D. Cal. Feb. 6, 2015); *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). A RICO claim must satisfy Rule 9(b)'s particularity requirements. *Rondberg v. McCoy*, 2009 WL 5184053 at *5 (S.D. Cal Dec. 21, 2009).

## III.   DISCUSSION

Plaintiff's FAC states two counts that give rise to Federal Jurisdiction under 28 U.S.C. § 1331. (FAC at p. 4, 7.) Count One asserts a violation of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030. (FAC at p. 4.) Count Five asserts a RICO violation under 18 U.S.C. § 1962(c). (FAC at p. 7.) Plaintiff failed to plead both

4.

counts adequately.

**A. Plaintiff's FAC Fails to Allege an Actionable Violation of the Computer Fraud And Abuse Act under 18 U.S.C. § 1030**

Plaintiff's Count One alleges a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  To state a claim under the CFAA, Plaintiff must only show "unlawful access" to the computer.  *eBay Inc. v. Digital Point Solutions, Inc.,* 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009).  Fraud under the CFAA requires only a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act.  *Id.*  Plaintiff's claim falls under 18 U.S.C. § 1030(g)(I), (*see* FAC at p. 4), which allows "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator[.]"  *Id.*  Civil actions for a violation of 18 U.S.C. § 1030(g)(I) "may be brought only if the conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  *Id.*  Those subclauses read as follows:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
>
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or of 1 or more individuals;
>
> (III) physical injury to any person;
>
> (IV) a threat to public health or safety;
>
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or
>
> (VI) damage affecting 10 or more protected computers during any 1-

5.

year period[.]

18 U.S.C § 1030(c)(4)(A)(i)

Plaintiff's claim appears to be based on subclause (I), which requires the "loss be to 1 or more persons during any 1-year period[…] aggregating at least $5,000 in value[.]"  18 U.S.C. § 1030(c)(4)(A)(i)(I).

Here, Plaintiff's FAC offers only a recitation of the elements for 18 U.S.C. § 1030.  (FAC ¶¶ 25–29.)  The FAC states that the Defendants "exceeded authorized access" and "withheld login credentials to Plaintiff's banks accounts."  (FAC ¶ 25.)  Defendants intentionally accessed Plaintiff's payroll accounts and as a result "recklessly caused damage to Plaintiff."  (FAC ¶ 26.)  Finally, Defendants "transmitted an electronic communication to Plaintiff containing a threat to impair the confidentiality of Plaintiff's information."  (FAC ¶ 27.)  Nowhere in the FAC does Plaintiff attempt to explain what any of these statements mean.  The FAC simply states, in a conclusory fashion, Defendants knowingly and without authorization used Plaintiff's computer to "facilitate extortion" that "caused loss aggregating at least $5,000 in value[]" and "Plaintiff was harmed by Defendants' conduct."  (FAC ¶¶ 25 – 29.)

The FAC offers nothing to show how Plaintiff suffered this loss or that the loss exceeds $5,000.  (FAC ¶¶ 25–29.)  The FAC does allege that Defendants "eliminated access to Plaintiff's payroll service on February 28, 2019, causing significant damages to the business operations of Plaintiff,"  (FAC ¶ 19)  but this conclusory allegation does not show how that could cause $5,000 in damage.

In its Opposition, Plaintiff attempts to supplement their conclusory allegations from the FAC with facts that could potentially make it plausible that the Defendants could be responsible for causing the necessary $5,000 loss.  (Opp'n. at p. 5.)  Plaintiff adds they were forced to pay employees with handwritten checks, forced to hire new

accountants, purchase new "QuickBooks,"[1] and forced to spend time at an hourly rate to investigate and fix the problems from Defendants alleged breach.  (Opp'n. at pp. 5-6.)  Even if all of these components are compensable damages under the CFAA, *see, e.g., Kimberlite Corp. v. Does 1- 20,* 2008 WL 2264485, at *2 (N.D. Cal. June 2, 2008) (treating costs incurred investigating and repairing a data breach as losses under the CFAA), Plaintiff still failed to allege any facts that their investigation would require enough time and resources to amount to $5,000, and it is not self-evident that these expenses would add up to that much.  Defendants contend that even if all of the new reasons were re-alleged in a Second Amended Complaint, "they cannot plausibly amount to $5,000 in 'loss.'"  (Reply at p. 2.)  The Court agrees with the Defendants and is not persuaded that any and/or all of these, if taken as true, add up to the necessary $5,000 minimum that 18 U.S.C. § 1030(g)(I) requires.  Therefore, Plaintiff did not plead enough facts to support the reasonable inference that Defendant caused the amount of harm necessary to trigger liability under the CFAA.

## B. Plaintiff's FAC fails to allege a RICO violation by the Defendants

Count Five asserts a claim under 18 U.S.C. § 1962(c), which states that it is unlawful for persons employed by an enterprise to engage in the enterprise's activities that affect interstate or foreign commerce through a "pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c); (FAC ¶ 54 at p. 7-8.)  To state a claim under 18 U.S.C. § 1962(c) the "Plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Plaintiff fails to sufficiently allege these claims with particularity as is required for fraud claims under Fed. R. Civ. P. 9(b). *Rondberg*, 2009 WL 5184053 at *5 (S.D. Cal. Dec. 21, 2009); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 553- 555 (9th Cir. 2007).

---

[1] As noted in Defendants' Reply, Quickbooks' most expensive account is $75 per month. (Reply at 2.)

**1. The FAC fails to allege with particularity a pattern of racketeering activity even if the Court assumes there were two predicate acts.**

18 U.S.C. § 1961(1) defines the acts that constitute "racketeering activity[.]" Alleging wire fraud is a "cognizable RICO predicate[.]" *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008); 18 U.S.C. § 1343. "To state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least two predicate acts." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008). But, while two predicate acts are required, they may not be sufficient. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). The pattern also requires proof that the predicate acts are related and they pose a danger of allowing criminal activity to continue. *Turner*, 362 F.3d at 1229. "The continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). This continuity can be 'closed' or 'open-ended,' meaning "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition[.]" *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989).

Here, Plaintiff's FAC asserts the Defendants engaged in "racketeering activity" by:

> necessarily receiving the Stolen Property by way of its representation of former Tauler Smith bookkeeper, and by communicating its receipt of stolen property by representing CTRLR and Valerio in the present action, including the filing of a Notice of Removal on January 16, 2020, amounting to wire fraud in violation of 18 U.S.C. § 1341, and by further advancing the CTRLR-POE Conspiracy by assisting the other members of the CTRLR -POE Enterprise in arranging for mailing of transfer of the confidential materials where the scheme to defraud was perpetrated.

(FAC ¶ 70.)

Assuming it's true the "Stolen Property" satisfies the requirements of 18 U.S.C. § 2315, namely being worth $5,000 and crossing a "State or United States boundary after being stolen," and the "wire fraud" allegation constitutes a predicate act, the

1    FAC still does not plead a pattern of racketeering activity with particularity.  The FAC

2    does not allege a closed or open-ended pattern of predicate activity.  The FAC alleges

3    acts, not all of which constitute predicate acts under 18 U.S.C. §1961(1), beginning in

4    February of 2019 with the alleged stealing of materials and a fraudulent invoice.

5    (FAC ¶ 18.)  It continues on to list more claims of fraudulent small claims lawsuits in

6    June and September of 2019, neither of which are predicate acts.  (FAC ¶¶ 23, 65-66);

7    18 U.S.C. § 1961(1).  Their FAC culminates in hiring attorney Mark Poe "who is an

8    adversary to Plaintiff in a separate legal matter," again which is not a predicate act.

9    (Opp'n at p. 12.)

10        The FAC seems to allege the "CTRLR- POE" enterprise came into existence

11   "on or around January 16, 2020" when Defendants removed the action to federal

12   court.  (FAC ¶ 68.)  It continues in a conclusory fashion to assert "Thus Mark Poe and

13   Gaw Poe LLP are in possession of the Stolen Materials," including work done by

14   CTRLR and Valerio on behalf of the Plaintiff, where Gaw Poe was adverse to

15   Plaintiff in those matters.  (FAC ¶ 68.)

16        Neither the FAC nor Plaintiff's Opposition assert that this is a closed period of

17   repeated conduct, therefore the Court will look to whether it is an open-ended pattern

18   of racketeering activity.  (Opp'n at p. 12.)  The FAC asserts the materials were stolen

19   in early 2019 and given to Gaw Poe in early 2020.  (FAC ¶¶ 60- 68.)  However,

20   nothing in the FAC, besides conclusory allegations, shows how the plan was to give

21   this information to Gaw Poe to cause harm to Plaintiff.  On the contrary, the

22   "fraudulent invoice" issue ended May of 2019.  (FAC ¶¶ 22- 23.)

23        The FAC must assert a form of predicate misconduct that "by its nature projects

24   into the future with a threat of repetition."  *Turner*, 362 F.3d at 1229.  None of the

25   listed historical matters constitute predicate misconduct, except possibly the stolen

26   material and wire fraud allegation.  Even taking those as true predicate behavior and

27   separate incidents, they do not show a pattern of racketeering behavior.  *Turner*, 362

28   F3.d at 1229; *See also Sedima*, 472 U.S. at 496 (to state a claim under 18 U.S.C. §

9.

1962(c) the allegations must be conduct that equates to a pattern of racketeering activity from an enterprise). However, the FAC claims the material was stolen, and wire fraud committed, in 2019. (FAC ¶ 68.) This was before the "CTRLR-POE" enterprise allegedly came into existence in January 2020. (FAC ¶ 68.) The allegation in the FAC that "Mark Poe and Gaw Poe is in receipt of stolen property" that continues the scheme to "defraud" Plaintiff and is therefore advancing the "CTRLR-POE" Enterprise has not been plead with enough particularity to show it amounts to the necessary $5,000. Nor did Plaintiff plead that it was done to advance the "CTRLR-POE" Enterprise that may or may not have been in existence at the time. (FAC ¶ 69); 18 U.S.C. § 2314; 18 U.S.C. § 2315. The FAC fails to plead with sufficient particularity that the historical matters were not only predicate acts, but even taking them as predicate acts, the FAC fails to plead a continued pattern of racketeering activity for an enterprise that may or may not have been in existence at the time of the acts.

This seems to be a business relationship that ended poorly, not a criminal enterprises' continuing pattern of racketeering activity that threatens the public. The Court tends to agree that "by appearances" the RICO claim was added for an "improper purpose." Fed. R. Civ. P. 11(b)(1); Motion at p. 15.

//
//
//
//
//
//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.   CONCLUSION**

For the foregoing reasons the Court **<u>GRANTS</u>** Defendants' Motion for Judgment on the Pleadings as to Counts One and Five, the claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

Because the Court is dismissing the federal claims, there remains no basis of original federal jurisdiction over the remaining three claims (Counts 2, 3, and 4) in this action, all of which are state law claims. The Court declines to exercise supplemental jurisdiction over these claims and **<u>REMANDS</u>** the remainder of the action back to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

Dated: March 06, 2020                    _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.